### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

**WALSHAW**                                           **CIVIL ACTION**

**VERSUS**                                            **NO: 19-12131**

**PIERRE FABRE DERMA**                                **SECTION: "S" (4)**
**COSMETIQUE USA**

### ORDER AND REASONS

 **IT IS HEREBY ORDERED** that defendant's **Motion for Summary Judgment** (Rec. Doc. 35) is **DENIED**.

### BACKGROUND

 The following facts are pertinent to this products liability lawsuit. On or about June 30, 2018, plaintiff Michael Walshaw took a shower at his home. His wife had previously purchased a bottle of Glytone Exfoliating Body Lotion ("Glytone") containing 17.5% glycolic acid that had been placed in the shower. Prior to his shower, Walshaw had trimmed the hair in his genital area with a Norelco no-contact electric trimmer. He also read the warning label on the Glytone, which provided:

> **Directions for use:** Apply daily to arms, back of hands, legs and other parts of the body that require special attention. Not recommended for use on the face, or immediately after shaving or hair removal. For optimal results, use after bathing with Glytone Exfoliating Body Wash.
>
> **Warnings:** Avoid contact with eyes and mucous membranes. If eye contact occurs, rinse thoroughly with warm water. Do not use on irritated skin. If excessive irritation occurs, discontinue use and consult your physician.
>
> **For external use only. Keep out of reach of children.**

During the shower, Walshaw washed his entire body with a product called African Black soap shower gel, which he had used many times prior to and after June 30, 2018 without incident. Following his shower, Walshaw applied the Glytone all over his body, including to his genitals and genital area. He awoke in the night with burning sensation in his genital area, and rinsed the area. Over the next two days, the burning sensation increased, and on July 3, 2018 he went to the emergency room where he was diagnosed with partial and full thickness first and third degree chemical burns to his genitals.

Walshaw and his wife filed the instant suit, invoking the Louisiana Products Liability Act, and alleging that Mr. Walshaw suffered chemical burns to his genitals directly caused by Glytone. Specifically, plaintiffs have alleged a claim for inadequate warning under La. R.S. § 9:2800.57, as well as negligence,[1] redhibition, and loss of consortium.[2] The matter was removed to this court based on diversity jurisdiction.

Defendant now moves for summary judgment arguing that plaintiffs lack medical causation evidence, thus precluding recovery on their LPLA claim. Plaintiffs counter that expert

---

[1]The court notes that the negligence claim is barred by La. Rev. Stat. § 9:2800.52.

[2]The petition also alleged claims for construction or composition defect under La. R.S. § 9:2008.55, design defect under La. R.S. § 9:2800.56, and breach of express warranty under La. R.S. § 9:2800.58, but when those claims were challenged via defendant's summary judgment motion, plaintiff did not oppose citing to any material fact issues that would preclude summary judgment. "Failure to address a claim in response to a defendant's summary judgment motion constitutes abandonment of the claim." Venezia v. ConocoPhillips Co., 2014 WL 107962, at *13 (E.D. La. Jan. 9, 2014) (citing Vela v. City of Houston, 276 F.3d 659, 678-79 (5th Cir. 2001)). The court therefore assumes those claims have been abandoned.

medical testimony is not necessary to establish causation in this case because the facts are uncomplicated enough for a layperson to perceive and interpret. Plaintiffs further argue that the testimony of their medical expert, Dr. Darrell Henderson, establishes that a fact issue on causation exists.

**DISCUSSION**

*Summary Judgment Standard*

Rule 56 of the Federal Rules of Civil Procedure provides that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Granting a motion for summary judgment is proper if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits filed in support of the motion demonstrate that there is no genuine issue as to any material fact that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The court must find "[a] factual dispute ... [to be] 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party ... [and a] fact ... [to be] 'material' if it might affect the outcome of the suit under the governing substantive law." Beck v. Somerset Techs., Inc., 882 F.2d 993, 996 (5th Cir. 1989) (citing Anderson, 477 U.S. 242 (1986)).

If the moving party meets the initial burden of establishing that there is no genuine issue, the burden shifts to the non-moving party to produce evidence of the existence of a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). The non-movant cannot satisfy the

3

summary judgment burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence. Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

If the opposing party bears the burden of proof at trial, the moving party does not have to submit evidentiary documents properly to support its motion, but need only point out the absence of evidence supporting the essential elements of the opposing party's case. Saunders v. Michelin Tire Corp., 942 F.2d 299, 301 (5th Cir. 1991).

### The Louisiana Products Liability Act ("LPLA")

Defendant argues that plaintiffs cannot prevail on their claims brought under the LPLA because they can provide no evidence of causation. Defendant also argues that because Walshaw did not heed the warnings on the product, his was not a "reasonably anticipated use," barring a failure to warn claim.

The LPLA "establishes the exclusive theories of liability for manufacturers for damages caused by their products." La. Rev. Stat. § 9:2800.52. Under the LPLA, a manufacturer of a product is "liable to a claimant for damage proximately caused by a characteristic of the product that renders the product unreasonably dangerous when the damage arose from a reasonably anticipated use of the product by the claimant or another person or entity." Id. at § 9:2800.54. To prevail on a LPLA claim, a plaintiff must prove: (1) that the defendant is a manufacturer of the product; (2) that the claimant's damage was proximately caused by a characteristic of the product; (3) that the characteristic made the product unreasonably dangerous in one of the four ways provided in the statute; and (4) that the claimant's damage arose from a reasonably

anticipated use of the product by the claimant or someone else. Jefferson v. Lead Industries Ass'n, Inc., 106 F.3d 1245, 1251 (5th Cir. 1997) (citing generally J. Kennedy, A Primer on the Louisiana Products Liability Act, 49 LA. L. REV. 565 (1989)); La. Rev. Stat. § 9:2800.54.

 Liability may be imposed when a product is found to be unreasonably dangerous in (1) construction or composition, (2) design, (3) inadequate warning or (4) nonconformity with an express warranty. La. Rev. Stat. §§ 9:2800.55, 9:2800.56, 9:2800.57, 9:2800.58. At issue in this case is the third theory, failure to warn.

The LPLA requires a manufacturer to use reasonable care in deciding whether to provide a warning for its product. The statute provides that:

> A. A product is unreasonably dangerous because an adequate warning about the product has not been provided if, at the time the product left its manufacturer's control, the product possessed a characteristic that may cause damage and the manufacturer failed to use reasonable care to provide an adequate warning of such characteristic and its danger to users and handlers of the product.
>
> B. A manufacturer is not required to provide an adequate warning about his product when:
>
> (1) The product is not dangerous to an extent beyond that which would be contemplated by the ordinary user or handler of the product, with the ordinary knowledge common to the community as to the product's characteristics; or
>
> (2) The user or handler of the product already knows or reasonably should be expected to know of the characteristic of the product that may cause damage and the danger of such characteristic.

La. Rev. Stat. 2800.57.

"To successfully maintain a failure-to-warn claim under the LPLA, a plaintiff must demonstrate

5

that the product in question has a potentially damage-causing characteristic and that the manufacturer failed to use reasonable care to provide an adequate warning about this characteristic." Stahl v. Novartis Pharmaceuticals Corp., 283 F.3d 254, 264 (5th Cir. 2002).

***A fact issue exists as to causation.***

Defendants argue that expert testimony is necessary to establish causation in this products liability case, and plaintiffs' expert, Dr. Darrell Henderson, is not qualified to provide expert testimony on the subject of causation. Plaintiffs counter that due to glycolic acid's known propensity to cause chemical burns, the fact that the Glytone was the only thing applied by Walshaw and left on his genitals after showering, and the timing of the manifestation of his injuries after application, expert testimony is not needed to prove that Glytone caused Walshaw's chemical burns. In the alternative, plaintiffs argue that Dr. Henderson's report and testimony does in fact establish both general causation (that glycolic acid in sufficient concentrations causes chemical burns) and specific causation (that the Glytone applied by Walshaw caused his burns).

In a separate order, the court has determined that Dr. Henderson's expert testimony is admissible. Dr. Henderson, Walshaw's treating physician and expert witnesss, has testified that glycolic acid, in the concentration found in Glytone, can cause chemical burns.[3] He has also provided a report in which he opines that the Glytone in fact caused the chemical burns to

---

[3]Dr. Henderson's report and opinion were challenged in a separate motion in limine, which was denied.

Walshaw's genitals. Thus, while defendant may dispute plaintiffs' causation theory, plaintiffs have pointed to admissible evidence demonstrating that a fact issue exists on this point.

***A fact issue exists as to whether Walshaw's was a "reasonably anticipated use."***

Defendant also argues that Walshaw's use was not anticipated because he did not heed the warning included on the Glytone bottle. Defendant points specifically to the language on the warning label that provided that Glytone was "[n]ot recommended for use on the face, or immediately after shaving or hair removal", and that users should "[a]void contact with eyes and mucous membranes." Defendant further argues that because Walshaw had trimmed his hair prior to applying Glytone, and applied it to his genitals, which defendant argues is a mucous membrane, his use was not reasonably anticipated.

Defendant acknowledges that the label did not define "hair removal", although its expert testified that she considered trimming to be encompassed within hair removal. Walshaw, however, testified that he interpreted "hair removal" to mean depilatory lotions and creams used by females that actually dissolve the hair, not to refer to the use of a no-contact trimmer (which essentially cut his hair). In other words, in his view, the warning was inapplicable because he shortened his hair, rather than removing it.

While the court recognizes that Walshaw's subjective beliefs about terms used in the warning cannot be the basis for finding it inadequate, the court finds that an interpretation limiting "hair removal" to meaning actual hair removal by chemicals or shaving, but not including cutting, is not unreasonable. At the very least, it is open for interpretation to such an

7

extent that a legal conclusion that Walshaw's use was unanticipated is inappropriate on the basis of the hair removal warning.

As for avoiding "mucous membranes," defendant contends that the genitals are mucous membranes, thus in applying the Glytone to his genital area, Walshaw failed to heed the adequate warning. However, "mucous membranes" is not defined within the warning label, and Walshaw testified that he understood it to mean eyes and nose. Dr. Henderson testified that the penis and scrotum are not mucous membranes (although the urethra is), and defendant, Pierre Fabre acknowledged that the scrotum is not a mucous membrane, while its expert, Dr. Christine Cazeau, was equivocal on that. On this record, the court finds that there is a material fact issue regarding whether Walshaw may be considered to have applied the Glytone to a mucous membrane, precluding summary judgment on whether his use was reasonably anticipated. Accordingly,

**IT IS HEREBY ORDERED** that defendant's **Motion for Summary Judgment** (Rec. Doc. 35) is **DENIED**.

New Orleans, Louisiana, this ___3rd___ day of September, 2020.

**MARY ANN VIAL LEMMON**
**UNITED STATES DISTRICT JUDGE**